# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**   **2. PLEASE TYPE OR PRINT**   **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>Mid Vermont Christian School, et al. v. Bouchey, et al. | District Court or Agency:<br><br>District of Vermont | Judge:<br><br>Geoffrey W. Crawford |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>June 11, 2024 | District Court Docket No.:<br><br>2:23-cv-652 |
| | Date the Notice of Appeal was Filed:<br><br>June 21, 2024 | Is this a Cross Appeal?<br><br>☐ Yes   ☑ No |

| **Attorney(s) for Appellant(s):**<br>☑ Plaintiff<br>☐ Defendant | Counsel's Name:<br><br>See Attached | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|

| **Attorney(s) for Appellee(s):**<br>☐ Plaintiff<br>☑ Defendant | Counsel's Name:<br><br>See attached | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>70 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously? ☑ Yes   ☐ No<br><br>If Yes, provide the following:<br><br>Case Name: **See attached at \*.**<br><br>2d Cir. Docket No.:   Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION;  (2) THE RESULT BELOW;  (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND  (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party   ☐ Diversity<br>☑ Federal question (U.S. not a party)   ☐ Other (specify): _____ | ☐ Final Decision   ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))<br>☑ Interlocutory Decision Appealable As of Right   ☐ Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C**  (Rev. October  2016)

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**

- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal
- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [ ] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [✓] Other (specify): Denial of Mt. for Preliminary Inj.

**3. Relief**

- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [✓] Injunctions:
  - [✓] Preliminary
  - [ ] Permanent
  - [✓] Denied

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [✓] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright ☐ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [✓] Yes
- [ ] No

Will appeal raise a matter of first impression?

- [ ] Yes
- [✓] No

---

1. Is any matter relative to this appeal still pending below? [✓] Yes, specify: Motions to dismiss are still pending below. [ ] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal? [ ] Yes [✓] No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [ ] Yes [✓] No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: July 5, 2024 | Signature of Counsel of Record: Ryan J. Tucker |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**Counsel for Appellants**

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@adflegal.org

Ryan J. Tucker
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rtucker@adflegal.org

Jacob Reed
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jreed@adflegal.org

David A. Cortman
1000 Hurricane Shoals Rd. NE, Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@adflegal.org

Michael J. Tierney
Gretchen M. Wade
WADLEIGH, STARR & PETERS, PLLC
95 Market Street
Manchester, NH 03101
(603) 669-4140
mtierney@wadleighlaw.com
gwade@wadleighlaw.com

## Counsel for Appellees

For Appellee Jay Nichols:

Steven J. Zakrzewski , Esq.
Gordon Rees Scully Mansukhani, LLP
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033
(860) 494-7511
Fax: (860) 560-0185
Email: szakrzewski@grsm.com

For Appellees Bouchey and Samuelson:

Jonathan T. Rose
Patrick T. Gaudet
Kate T. Gallagher
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-1101
jonathan.rose@vermont.gov
patrick.gaudet@vermont.gov
kate.gallagher@vermont.gov

For Appellees Bourne, Gawel, Hartland School Board, Waits River
Valley School Board:

Pietro J. Lynn
Sean Toohey
Lynn, Lynn, Blackman & Manitsky, P.C.
76 St. Paul Street, Suite 400
Burlington, VT 05401
(801) 860-1500
plynn@lynnlawvt.com
stoohey@lynnlawvt.com

\* (Following from page 1 of Form C, "Has this matter been before this Circuit previously?") –

This exact case has not been before this Circuit previously. However, substantially similar issues related to religious schools participating in Vermont's Town Tuitioning Program were before this Court in *In re A.H. v. French*, 999 F.3d 98 (2d Cir. 2021) (Judge Jacobs, Judge Sullivan, and Judge Menashi) and *A.H. v. French*, 985 F.3d 165 (2d Cir. 2021) (Judge Walker and Judge Menashi).

## Addendum A

### (1)  Description of the nature of the action

*Vermont Principals Association.* In February 2023, Mid Vermont Christian School's high school girls' basketball team qualified for the Vermont state girls' basketball tournament. The School was set to play a school whose girls' team had a biological male player. Mid Vermont Christian is a Christian school and its religious beliefs prohibited it from forcing its girls' team to play against a biological male in the girls' state basketball tournament. So the School forfeited the game, thereby ending its tournament run.

In response, the Vermont Principals Association ("VPA"), through its Executive Director Jay Nichols (Appellee here), immediately suspended Mid Vermont Christian from all VPA activities and events, including academic competitions and co-educational competitions. The VPA claimed that Mid Vermont Christian's forfeiture violated its gender identity policy, which provides that students shall be allowed to compete on teams in accordance with their claimed gender "identity" and not biological sex. The School appealed the decision internally through the VPA and raised its religious objection to having to force its female athletes to play against males. The VPA denied the appeal, said the School's religious objection was "wrong" and the School's decision "had nothing to do with religious beliefs." It then upheld its decision and permanently expelled Mid Vermont Christian from the association.

4

Mid Vermont Christian and two of its student-athletes and their parents sued alleging violations of their free exercise, free speech, association, church autonomy, and parental rights. They sought a preliminary injunction on free exercise and speech grounds, arguing the VPA excluded them from a public benefit based on their religious exercise; the VPA acted with impermissible religious hostility; the VPA's gender identity policy and actions in expelling the School were not neutral or generally applicable; the VPA's policy restricted their speech; and the VPA's actions and policy failed strict scrutiny.

*Town Tuitioning and Dual Enrollment.* Vermont's Town Tuition Program requires school districts that do not operate public high schools to pay for students who reside in the district to attend a public high school or a private independent school. In 2022, after this Court's decision in *In re A.H.*, 999 F.3d 98 (2d Cir. 2021), the Vermont Agency of Education changed how private schools could become "approved independent schools" and thus eligible to receive program funds.

Each school—including Mid Vermont Christian—seeking approved independent status was then required to affirm compliance with new provisions. In January 2023, Mid Vermont Christian signed the form seeking re-approval but clarified it was signing without waiver of its statutory and constitutional rights to make decisions based on its religious beliefs. The Vermont Secretary of Agency recommended denying Mid Vermont Christian because the State said the School was not able to comply with

5

new nondiscrimination rules. The Board of Agency declined to take action until the School submitted paperwork agreeing to comply with the rules.

After this lawsuit was filed, the State backtracked and told the School it could participate as an approved independent school for now. The Agency also stated that it was in the process of providing technical support for new rules that have gone into effect. After it completes the process, the Agency said it would make recommendations to the Board on pending applications. This situation leaves Mid Vermont Christian with no clarity moving forward.

Mid Vermont sued alleging violations of its free exercise, free speech, and association rights. It also sought an injunction requesting that it be approved and allowed to participate in the State's Town Tuitioning and Dual Enrollment programs.

**(2)    The result below**

The district court denied the motion for preliminary injunction. The district court held Plaintiffs were unlikely to succeed on the merits because the policy was neutral and generally applicable and rational basis review applied. Appellants filed this appeal and an injunction pending appeal at the district court, which is currently pending.

The district court also held that Mid Vermont Christian's claims against the State defendants related to the Town Tuitioning and Dual Enrollment Programs were either moot or not ripe because the School

received tuitioning funds for the 2023-24 school year and a full-approval decision is still pending before the Board of Education.

**(3)  Copies of the Notice of Appeal and Current Lower Court Docket Sheet**

Attached are copies of the notice of appeal and current lower court docket sheet.

**(4)  Copies of all Relevant Opinions/Orders Forming the Basis for this Appeal**

Attached is a copy of the district court's Order denying Plaintiffs' motion for a preliminary injunction dated June 11, 2024.

# Addendum B

## List of Issues to be Raised on Appeal

As it relates to the Vermont Principals Association (Appellee Nichols), the district court denied Plaintiff-Appellants' motion for preliminary injunction, holding they were not likely to succeed on the merits of their claims.

So under the rubric of likelihood of success, the issues on appeal are:

1. State actors violate the Free Exercise Clause by burdening religious exercise through a policy or action that is not neutral or generally applicable. The VPA's gender identity policy is implemented on "a case-by-case basis"; the VPA can issue a waiver from any of its policies; the VPA concedes its gender identity policy does not apply to Mid Vermont Christian's own teams; and the VPA has permitted other schools to forfeit games for secular reasons without penalty. Is the VPA's enforcement of its gender identity policy and expulsion of Mid Vermont Christian neutral and generally applicable?

2. State actors must be neutral toward religion and "give full and fair consideration of [religious actors'] religious objection[s]," *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 640 (2018). The VPA expelled Mid Vermont Christian entirely from the association because the School followed its religious beliefs by forfeiting a girls' basketball game against a male. The VPA disparaged these beliefs in its appeal process. Did the VPA fail to act neutral toward the School's religious beliefs, or did it act with impermissible religious hostility that must be automatically set aside?

3. The government cannot exclude religious adherents from a public benefit due to their "religious character" or "religious exercise." *See Carson v. Makin,* 596 U.S. 767 (2022). The VPA is open to all public and private schools in Vermont. The VPA expelled Mid Vermont Christian because the School refused to transgress its religious beliefs. Did the VPA violate the Free Exercise Clause by excluding Mid Vermont Christian from a public benefit due to its religious exercise?

4. The "[T]he First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply misguided." *303 Creative, LLC. V. Elenis*, 600 U.S. 570, 586 (2023). The VPA's policies address gender identity issues and thus regulate the School's use of pronouns and other speech on sex and gender. Did the VPA's gender identity policy infringe on Appellants' free speech rights?

5. If the Appellees infringed on Appellants' constitutional rights, can they satisfy strict scrutiny?

As it relates to the remaining Appellees, the district court denied Plaintiff-Appellants' motion for preliminary injunction, holding their claims were not ripe or were moot.

So the issues on appeal related to Vermont's Town Tuitioning and Dual Enrollment Programs are:

6. Did the district court err in finding that Plaintiff-Appellant's claims were not ripe (and thereby failed to reach its constitutional claims) when Vermont's Board of Education's current rules require the School to comply with nondiscrimination rules that prohibit the School's religiously based policies as a condition to receiving public tuition funds?

7. Did the district court err in finding that Plaintiff-Appellant's claims were moot (and thereby failed to reach its constitutional claims) when Vermont's Board of Education's current rules require the School to comply with nondiscrimination rules that prohibit the School's religiously based policies as a condition to receiving public tuition funds?

## Applicable Standards of Review

The Court "review[s] a district court's denial of a preliminary injunction for abuse of discretion. A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *A.H. v. French,* 985 F.3d 165, 175 (2d Cir. 2021) (cleaned up).

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF VERMONT

| | |
|---|---|
| **MID VERMONT CHRISTIAN SCHOOL**, on behalf of itself and its students and its students' parents; **A.G.** and **M.G.**, by and through their parents and natural guardians, Chris and Bethany Goodwin; **CHRISTOPHER GOODWIN**, individually; and **BETHANY GOODWIN**, individually, | Case No. 2:23-cv-00652 **NOTICE OF APPEAL** |
| Plaintiffs, | |
| v. | |
| **ZOIE SAUNDERS**, in her official capacity as Interim Secretary of the Vermont Agency of Education; **JENNIFER DECK SAMUELSON**, in her official capacity as Chair of the Vermont State Board of Education; **CHRISTINE BOURNE**, in her official capacity as Windsor Southeast Supervisory Union Superintendent; **HEARTLAND SCHOOL BOARD**; **RANDALL GAWEL**, in his official capacity as Orange East Supervisory Union Superintendent; **WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD**; and **JAY NICHOLS**, in his official capacity as the Executive Director of The Vermont Principals' Association, | |
| Defendants. | |

PLEASE TAKE NOTICE that Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the Order on Motion for Preliminary Injunction (ECF No. 57) entered on June 11, 2024, denying Plaintiffs' motion for a preliminary injunction.

Respectfully submitted this 21st day of June, 2024.

By: *s/ Ryan J. Tucker*

Michael J. Tierney
VT Bar No. 5275
Gretchen M. Wade
NH Bar No. 273726
WADLEIGH, STARR & PETERS, P.L.L.C.
95 Market Street
Manchester, NH 03101
Telephone: (603) 669-4140
Fax: (603) 669-6018
mtierney@wadleighlaw.com
gwade@wadleighlaw.com

Ryan J. Tucker*
AZ Bar No. 034382
David Cortman
AZ Bar No. 29490
Katherine Anderson*
AZ Bar No. 033104
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
rtucker@adflegal.org
dcortman@adflegal.org
kanderson@adflegal.org

Jacob Reed*
VA Bar No. 97181
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
jreed@ADFlegal.org

*Attorneys for Plaintiffs*
*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, I electronically filed the foregoing Notice of Appeal with the Clerk of Court and all counsel of record will be served via the Court's CM/ECF system.

*s/ Ryan J. Tucker*
Ryan J. Tucker
*Counsel for Plaintiffs*

ENE0

# U.S. District Court
## District of Vermont (Burlington)
## CIVIL DOCKET FOR CASE #: 2:23-cv-00652-gwc

Mid Vermont Christian School et al v. Bouchey et al
Assigned to: Chief Judge Geoffrey W. Crawford
Cause: 42:1983 Civil Rights Act

Date Filed: 11/21/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Mid Vermont Christian School**
*on behalf of itself and its students and its students' parents*

represented by **Ryan J. Tucker , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
(480) 444-0020
Fax: (480) 444-0028
Email: rtucker@ADFlegal.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
Alliance Defense Fund
1000 Hurrican Shoals Rd NE, Suite D1000
Lawrenceville, GA 30043
(770) 339-0774
Fax: (770) 339-6744
Email: dcortman@adflegal.org
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
603-206-7262
Email: gwade@wadleighlaw.com
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
Alliance Defending Freedom
44180 Riverside Pkwy
Lansdowne, VA 20176
571-707-4718
Email: jreed@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
480-444-0020
Fax: 480-444-0028
Email: kanderson@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
(603) 669-4140
Fax: (603) 669-6018
Email: mtierney@wadleighlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**A. G.**
*by and through their parents and natural guardians, Chris and Bethany Goodwin*

represented by **Ryan J. Tucker , Esq.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**M. G.**
*by and through their parents and natural guardians, Chris and Bethany Goodwin*

represented by **Ryan J. Tucker , Esq.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Goodwin**          represented by  **Ryan J. Tucker , Esq.**
*individually*                                   (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *PRO HAC VICE*
                                                 *ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bethany Goodwin**
*individually*

represented by   **Ryan J. Tucker , Esq.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**T. S.**
*by and through their parents and natural*
*guardians, Nathaniel and Dawna Slarve*
*TERMINATED: 06/21/2024*

represented by   **Ryan J. Tucker , Esq.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**K. S.**
*by and through their parents and natural*
*guardians, Nathaniel and Dawna Slarve*
*TERMINATED: 06/21/2024*

represented by **Ryan J. Tucker , Esq.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nathaniel Slarve**
*individually*
*TERMINATED: 06/21/2024*

represented by **Ryan J. Tucker , Esq.**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Dawna Slarve**                          represented by   **Ryan J. Tucker , Esq.**
*individually*                                            (See above for address)
*TERMINATED: 06/21/2024*                                  *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **David A. Cortman , Esq.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Gretchen M. Wade , Esq.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Jacob E. Reed , Esq.**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Katherine L. Anderson , Esq.**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Michael J. Tierney , Esq.**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**Heather Bouchey**                       represented by   **Jonathan T. Rose , Esq.**
*in her official capacity as Interim Secretary*           Office of the Attorney General
*of the Vermont Agency of Education*                      109 State Street
                                                          Montpelier, VT 05609
                                                          802-793-1646
                                                          Email: jonathan.rose@vermont.gov
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Kate T. Gallagher**
                                                          Office of the Attorney General
                                                          109 State Street
                                                          Montpelier, VT 05609-1001
                                                          802-828-1300
                                                          Email: kate.gallagher@vermont.gov

*TERMINATED: 02/23/2024*

**Patrick T. Gaudet , Esq.**
Vermont Attorney General's Office
HC 2 North
280 State Drive
Waterbury, VT 05671-2080
(802) 241-0207
Email: patrick.gaudet@vermont.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

Jennifer Deck Samuelson                    represented by   **Jonathan T. Rose , Esq.**
*in her official capacity as Chair of the*                  (See above for address)
*Vermont State Board of Education*                          *ATTORNEY TO BE NOTICED*

                                                  **Kate T. Gallagher**
                                                  (See above for address)
                                                  *TERMINATED: 02/23/2024*

                                                  **Patrick T. Gaudet , Esq.**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

Christine Bourne                           represented by   **Pietro J. Lynn , Esq.**
*in her official capacity as Windsor*                        Lynn, Lynn, Blackman & Manitsky, P.C.
*Southeast Supervisory Union*                                76 St. Paul Street, Suite 400
*Superintendent*                                             Burlington, VT 05401
                                                  (802) 860-1500
                                                  Fax: (802) 860-1580
                                                  Email: plynn@lynnlawvt.com
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Sean Toohey , Esq.**
                                                  Lynn, Lynn, Blackman & Manitsky, P.C.
                                                  76 St. Paul Street, Suite 400
                                                  Burlington, VT 05401
                                                  (802) 860-1500
                                                  Fax: (802) 860-1580
                                                  Email: stoohey@lynnlawvt.com
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

Hartland School Board                      represented by   **Pietro J. Lynn , Esq.**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Sean Toohey , Esq.**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Randall Gawel**
*in his official capacity as Orange East*
*Supervisory Union Superintendent*

represented by **Pietro J. Lynn , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Toohey , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Waits River Valley (Unified #36**
**Elementary) School Board**

represented by **Pietro J. Lynn , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Toohey , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jay Nichols**
*in his official capacity as the Executive*
*Director of The Vermont Principals'*
*Association*

represented by **Steven J. Zakrzewski , Esq.**
Gordon Rees Scully Mansukhani, LLP
95 Glastonbury Blvd., Suite 206
Glastonbury, CT 06033
(860) 494-7511
Fax: (860) 560-0185
Email: szakrzewski@grsm.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/21/2023 | 1 | COMPLAINT against Heather Bouchey, Christine Bourne, Randall Gawel, Hartland School Board, Jay Nichols, Jennifer Deck Samuelson, Waits River Valley (Unified #36 Elementary) School Board filed by T. S., Christopher Goodwin, Dawna Slarve, Mid Vermont Christian School, K. S., A. G., Bethany Goodwin, Nathaniel Slarve, M. G.. Summons issued. LR 73 Forms issued. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Civil Cover Sheet)(drg) (Entered: 11/21/2023) |
| 11/21/2023 | 2 | CORPORATE DISCLOSURE STATEMENT pursuant to Local Rule 7.1(a) by Mid Vermont Christian School (drg) (Entered: 11/21/2023) |
| 11/21/2023 | 3 | MOTION for Appearance Pro Hac Vice of Katherine L. Anderson, Esq. filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Katherine Anderson, # 2 Certificates of Good Standing)(jh) (Entered: 11/22/2023) |
| 11/21/2023 | 4 | MOTION for Appearance Pro Hac Vice of Jacob E. Reed, Esq. filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Jacob Reed (Unsigned), # 2 Certificate of Good Standing)(jh) (Entered: 11/22/2023) |
| 11/21/2023 | 5 | MOTION for Appearance Pro Hac Vice of Ryan Tucker, Esq. filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Ryan Tucker, # 2 Certificates of Good Standing)(jh) (Entered: 11/22/2023) |

| 11/28/2023 | 6 | ORDER granting 3 Motion for Admission Pro Hac Vice of Katherine L. Anderson, Esq.; granting 4 Motion for Admission Pro Hac Vice of Jacob E. Reed, Esq.; granting 5 Motion for Admission Pro Hac Vice of Ryan Tucker, Esq. Signed by Judge Kevin J. Doyle on 11/28/2023. (This is a text-only Order.) (drg) (Entered: 11/28/2023) |
| 12/12/2023 | 7 | WAIVER OF SERVICE Returned Executed: Heather Bouchey waiver sent on 11/27/2023, answer due 1/26/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 8 | WAIVER OF SERVICE Returned Executed: Jennifer Deck Samuelson waiver sent on 11/27/2023, answer due 1/26/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 9 | WAIVER OF SERVICE Returned Executed: Waits River Valley (Unified #36 Elementary) School Board waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 10 | WAIVER OF SERVICE Returned Executed: Randall Gawel waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 11 | WAIVER OF SERVICE Returned Executed: Hartland School Board waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 12 | WAIVER OF SERVICE Returned Executed: Christine Bourne waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 13 | WAIVER OF SERVICE Returned Executed: Jay Nichols waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/19/2023 | 14 | MOTION for Preliminary Injunction filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Memorandum in Support, # 2 Index of Exhibits, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Declaration of Vicky Fogg, # 16 Declaration of Nathaniel and Dawna Slarve, # 17 Declaration of Christopher Goodwin, # 18 Declaration of Bethany Goodwin)(Tucker, Ryan) (Entered: 12/19/2023) |
| 12/19/2023 | 15 | ORDER: On or before 12/28/2023, Plaintiffs shall return executed their Magistrate Judge Assignment Form in accordance with Local Rule 73(c). Signed by Judge Kevin J. Doyle on 12/19/2023. (drg) (Entered: 12/19/2023) |
| 12/20/2023 | 16 | CONSENT to Direct Assignment by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Tucker, Ryan) (Entered: 12/20/2023) |
| 12/29/2023 | 17 | NOTICE OF APPEARANCE by Kate T. Gallagher on behalf of Heather Bouchey, Jennifer Deck Samuelson.(Gallagher, Kate) (Entered: 12/29/2023) |
| 12/29/2023 | 18 | CONSENT to Direct Assignment by Heather Bouchey, Jennifer Deck Samuelson (Gallagher, Kate) (Entered: 12/29/2023) |
| 12/30/2023 | 19 | MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction filed by Heather Bouchey, Jennifer Deck Samuelson(Gallagher, Kate) (Entered: 12/30/2023) |
| 01/02/2024 | 20 | NOTICE OF APPEARANCE by Pietro J. Lynn, Esq on behalf of Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board.(Lynn, Pietro) (Entered: 01/02/2024) |
| 01/02/2024 | 21 | NOTICE OF APPEARANCE by Sean Toohey, Esq on behalf of Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School |

| | | Board.(Toohey, Sean) (Entered: 01/02/2024) |
|---|---|---|
| 01/02/2024 | 22 | OBJECTION to Direct Assignment by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board (Lynn, Pietro) (Entered: 01/02/2024) |
| 01/02/2024 | 23 | CASE Reassigned to Chief Judge Geoffrey W. Crawford. Judge Kevin J. Doyle no longer assigned to the case. (drg) (Entered: 01/02/2024) |
| 01/02/2024 | 24 | RESPONSE to 19 MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Tucker, Ryan) (Entered: 01/02/2024) |
| 01/04/2024 | 25 | STIPULATED MOTION for Extension of Time to File Answer re 1 Complaint filed by Heather Bouchey, Jennifer Deck Samuelson(Gallagher, Kate) (Entered: 01/04/2024) |
| 01/29/2024 | 26 | RESPONSE in Opposition re 14 MOTION for Preliminary Injunction filed by Heather Bouchey, Jennifer Deck Samuelson. (Attachments: # 1 Declaration of Samuelson, # 2 Declaration of Bouchey, # 3 Exhibit A, # 4 Exhibit B)(Gallagher, Kate) (Entered: 01/29/2024) |
| 01/31/2024 | 27 | RESPONSE in Opposition re 14 MOTION for Preliminary Injunction filed by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board. (Lynn, Pietro) (Entered: 01/31/2024) |
| 01/31/2024 | 28 | MOTION to Dismiss Case for Lack of Jurisdiction filed by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Lynn, Pietro) Modified on 2/1/2024 to clarify attachments (sjl). (Entered: 01/31/2024) |
| 01/31/2024 | 29 | NOTICE OF APPEARANCE by Steven J. Zakrzewski, Esq on behalf of Jay Nichols. (Zakrzewski, Steven) (Entered: 01/31/2024) |
| 01/31/2024 | 30 | MEMORANDUM in Opposition re: 14 MOTION for Preliminary Injunction by Jay Nichols (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Zakrzewski, Steven) (Attachment 5 replaced on 2/1/2024) (sjl). (Entered: 01/31/2024) |
| 02/01/2024 | 31 | ORDER granting 19 MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction. Response due January 31, 2024; Reply due February 21,2024. Signed by Chief Judge Geoffrey W. Crawford on 2/1/2024. (This is a text-only Order.) (jal) (Entered: 02/01/2024) |
| 02/01/2024 | 32 | ORDER granting 25 MOTION for Extension of Time to Answer re 1 Complaint; Heather Bouchey and Jennifer Deck Samuelson answers due February 15, 2024. Signed by Chief Judge Geoffrey W. Crawford on 2/1/2024. (This is a text-only Order.) (jal) (Entered: 02/01/2024) |
| 02/01/2024 | 33 | NOTICE OF APPEARANCE by Patrick T. Gaudet, Esq on behalf of Heather Bouchey, Jennifer Deck Samuelson.(Gaudet, Patrick) (Entered: 02/01/2024) |
| 02/01/2024 | 34 | NOTICE OF DOCKET ENTRY CORRECTION re: 30 Memorandum in Opposition re: 14 Motion for Preliminary Injunction filed by Jay Nichols. Exhibit E has been replaced to correct illegible PDF headers. The corrected document is now attached to 30 and this entry. (sjl) (Entered: 02/01/2024) |

| 02/01/2024 | 35 | STIPULATED MOTION for Extension of Time to File Answer *Nunc Pro Tunc* re 1 Complaint filed by Jay Nichols(Zakrzewski, Steven) Modified on 2/2/2024 to clarify text (sjl). (Entered: 02/01/2024) |
| 02/02/2024 | 36 | ORDER granting 35 MOTION for Extension of Time to Answer re 1 Complaint; Jay Nichols answer due February 15, 2024. Signed by Chief Judge Geoffrey W. Crawford on 2/2/2024. (This is a text-only Order.) (jal) (Entered: 02/02/2024) |
| 02/06/2024 | 37 | MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss Case for Lack of Jurisdiction *and to File a Single 20-Page Reply in Support of Motion for Preliminary Injunction* filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve(Reed, Jacob) (Entered: 02/06/2024) |
| 02/07/2024 | 38 | ORDER granting 37 MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss Case for Lack of Jurisdiction and to File a Single 20-Page Reply in Support of Motion for Preliminary Injunction. The court will schedule a single hearing on the motions for preliminary injunction and to dismiss after briefing is complete on both motions. Signed by Chief Judge Geoffrey W. Crawford on 2/7/2024. (This is a text-only Order.) (jal) (Entered: 02/07/2024) |
| 02/15/2024 | 39 | MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Gallagher, Kate) (Attachments 1-4 replaced on 2/16/2024) (sjl). (Entered: 02/15/2024) |
| 02/15/2024 | 40 | MOTION to Dismiss 1 Complaint filed by Jay Nichols (Zakrzewski, Steven) Modified on 2/16/2024 to clarify text and link entries (sjl). (Entered: 02/15/2024) |
| 02/16/2024 | 41 | NOTICE OF DOCKET ENTRY CORRECTION re: 39 MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson. Exhibits A-D have been replaced to correct illegible PDF headers. The corrected documents are now attached to 39 and this entry. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D) (sjl) (Entered: 02/16/2024) |
| 02/21/2024 | 42 | REPLY to Response to 14 MOTION for Preliminary Injunction filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Declaration of Vicky Fogg, # 5 Declaration of Christopher Goodwin)(Tucker, Ryan) (Entered: 02/21/2024) |
| 02/23/2024 | 43 | NOTICE of Attorney Substitution by Jonathan T. Rose, Esq as to Heather Bouchey, Jennifer Deck Samuelson(Rose, Jonathan) (Entered: 02/23/2024) |
| 03/04/2024 | 44 | NOTICE of Hearing re: 14 MOTION for Preliminary Injunction, 28 & 39 MOTION to Dismiss Case for Lack of Jurisdiction, and 40 MOTION to Dismiss 1 Complaint. Motion Hearing set for 4/19/2024 at 9:30 AM in Burlington Courtroom 110 before Chief Judge Geoffrey W. Crawford. (eh) (Entered: 03/04/2024) |
| 03/15/2024 | 45 | RESPONSE in Opposition re 28 MOTION to Dismiss Case for Lack of Jurisdiction , 39 MOTION to Dismiss Case for Lack of Jurisdiction , 40 MOTION to Dismiss 1 Complaint filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Reed, Jacob) (Entered: 03/15/2024) |
| 03/28/2024 | 46 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson(Rose, Jonathan) (Entered: 03/28/2024) |

| 03/29/2024 | 47 | REPLY to Response to 28 MOTION to Dismiss Case for Lack of Jurisdiction filed by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board. (Lynn, Pietro) (Entered: 03/29/2024) |
|---|---|---|
| 03/29/2024 | 48 | ORDER granting 46 MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Dismiss Case for Lack of Jurisdiction. Time extended to April 5, 2024. Signed by Chief Judge Geoffrey W. Crawford on 3/29/2024. (This is a text-only Order.) (jal) (Entered: 03/29/2024) |
| 03/29/2024 | 49 | REPLY to Response to 40 MOTION to Dismiss 1 Complaint filed by Jay Nichols. (Zakrzewski, Steven) Modified on 4/1/2024 to clarify text (sjl). (Entered: 03/29/2024) |
| 04/05/2024 | 50 | REPLY to Response to 39 MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson. (Attachments: # 1 Index of Exhibits, # 2 Supplemental Declaration of Samuelson, # 3 Exhibit A, # 4 Supplemental Declaration of Bouchey, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit 1)(Rose, Jonathan) (Attachment 2 replaced to re-size document and docket text clarified on 4/9/2024) (eh). (Entered: 04/05/2024) |
| 04/19/2024 | 51 | MINUTE ENTRY for proceedings held before Chief Judge Geoffrey W. Crawford: Motion Hearing held on 4/19/2024 re 14 MOTION for Preliminary Injunction, 28 MOTION to Dismiss Case for Lack of Jurisdiction, 39 MOTION to Dismiss Case for Lack of Jurisdiction, and 40 MOTION to Dismiss 1 Complaint. R. Tucker, Esq., D. Cortman, Esq., J. Reed, Esq., and M. Tierney, Esq. present for plaintiffs. J. Rose, Esq. and P. Gaudet, Esq. present for defendants Heather Bouchey and Jennifer Deck Samuelson. P. Lynn, Esq. present for defendants Christine Bourne, Hartland School Board, Randall Gawel, and Waits River Valley (Unified #36 Elementary) School Board. S. Zakrzewski, Esq. present for defendant Jay Nichols. Court makes inquiries and counsel make statements. ORDERED: 14 MOTION for Preliminary Injunction, 28 MOTION to Dismiss Case for Lack of Jurisdiction, 39 MOTION to Dismiss Case for Lack of Jurisdiction, and 40 MOTION to Dismiss 1 Complaint are taken under advisement. (Court Reporter: Johanna Masse) (eh) (Entered: 04/19/2024) |
| 04/23/2024 | 52 | NOTICE *of Request to Defendant Nichols* by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Exhibit 1)(Tucker, Ryan) (Entered: 04/23/2024) |
| 05/02/2024 | 53 | NOTICE *Nichols' Response to Plaintiff's Counsel's* 52 NOTICE of Request to Defendant Nichols by Jay Nichols (Attachments: # 1 Exhibit 1) (Zakrzewski, Steven) Modified on 5/6/2024 to clarify text/link entries (sjl). (Entered: 05/02/2024) |
| 05/06/2024 | 54 | NOTICE *of Reply* re 53 by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Exhibit 1) (Tucker, Ryan) Modified on 5/6/2024 to link entries (sjl). (Entered: 05/06/2024) |
| 05/16/2024 | 55 | RESPONSE *Objection to Plaintiffs' Letter Request for Preliminary Injunction* re 54 NOTICE of Reply re 53 by Jay Nichols. (Zakrzewski, Steven) Modified on 5/16/2024 to clarify text (sjl). (Entered: 05/16/2024) |
| 05/28/2024 | 56 | TRANSCRIPT of Motions Hearing held on 4/19/2024 before Judge Geoffrey W. Crawford. Court Reporter/Transcriber Johanna Masse, telephone number 802-951-8102. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/21/2024. Redacted Transcript Deadline set for 7/1/2024. Release of Transcript Restriction set for 8/29/2024. (sjl) Modified on 5/28/2024 to correct text (sjl). (Entered: 05/28/2024) |

| 06/11/2024 | 57 | ORDER denying 14 Motion for Preliminary Injunction. The court will rule separately on the pending motions to dismiss. Signed by Chief Judge Geoffrey W. Crawford on 6/11/2024. (sjl) (Entered: 06/11/2024) |
| 06/21/2024 | 58 | NOTICE of Dismissal *of Plaintiffs T.S., K.S., Nathaniel Slarve, and Dawna Slarve* by K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Dawna Slarve) (Tucker, Ryan) (Entered: 06/21/2024) |
| 06/21/2024 | 59 | NOTICE OF APPEAL as to 57 Order on 14 Motion for Preliminary Injunction by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School. (Filing fee $ 605 receipt number BVTDC-1937316) (Tucker, Ryan) (Entered: 06/21/2024) |
| 06/21/2024 | 60 | MOTION For Injunction Pending Appeal filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School (Attachments: # 1 Memorandum in Support, # 2 Declaration of Christopher Goodwin)(Tucker, Ryan) (Entered: 06/21/2024) |
| 06/24/2024 | 61 | ORDER: re 60 MOTION For Injunction Pending Appeal: Response due July 3, 2024; Reply due July 10, 2024. Signed by Chief Judge Geoffrey W. Crawford on 6/24/2024.(This is a text-only Order.) (jal) (Entered: 06/24/2024) |
| 06/24/2024 | 62 | NOTICE of Hearing re: 60 MOTION For Injunction Pending Appeal . Motion Hearing set for 7/12/2024 at 2:00 PM in Burlington Courtroom 110 before Chief Judge Geoffrey W. Crawford. (eh) (Entered: 06/24/2024) |
| 06/26/2024 | 63 | JOINT MOTION for Adjudication of Motion for Injunction Pending Appeal on the Papers filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School(Cortman, David) (Entered: 06/26/2024) |
| 06/27/2024 | 64 | ORDER granting 63 JOINT MOTION for Adjudication of Motion for Injunction Pending Appeal on the Papers. Signed by Chief Judge Geoffrey W. Crawford on 6/27/2024. (This is a text-only Order.) (jal) (Entered: 06/27/2024) |
| 07/02/2024 | 65 | RESPONSE in Opposition re 60 MOTION For Injunction Pending Appeal filed by Heather Bouchey, Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board. (Lynn, Pietro) (Entered: 07/02/2024) |
| 07/03/2024 | 66 | MEMORANDUM in Opposition re: 60 MOTION For Injunction Pending Appeal by Jay Nichols (Zakrzewski, Steven) (Entered: 07/03/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/08/2024 14:34:38 | | |
| **PACER Login:** | cindyeville | **Client Code:** | 101563 |
| **Description:** | Docket Report | **Search Criteria:** | 2:23-cv-00652-gwc |
| **Billable Pages:** | 14 | **Cost:** | 1.40 |

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MID VERMONT CHRISTIAN SCHOOL, on behalf of itself and its students and its students' parents; A.G. and M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin; CHRISTOPHER GOODWIN, individually; BETHANY GOODWIN, individually; T.S. and K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve; NATHANIEL SLARVE, individually; and DAWNA SLARVE, individually; | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:23-cv-652 ) |
| HEATHER BOUCHEY, in her official capacity as Interim Secretary of the Vermont Agency of Education; JENNIFER DECK SAMUELSON, in her official capacity as Chair of the Vermont State Board of Education; CHRISTINE BOURNE, in her official capacity as Windsor Southeast Supervisory Union Superintendent; HEARTLAND SCHOOL BOARD; RANDALL GAWEL, in his official capacity as Orange East Supervisory Union Superintendent; WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD; and JAY NICHOLS, in his official capacity as the Executive Director of The Vermont Principals' Association, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 JUN 11  PM 4: 41

CLERK
BY_____

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION
### (Doc. 14)

This case concerns two distinct disputes arising from the participation of plaintiff Mid Vermont Christian School in educational programs administered by the State of Vermont. These programs are the Town Tuitioning program that requires school districts that do not operate their own high schools to pay tuition for students attending public and independent schools and the supervision of athletic competitions between high schools by the Vermont Principals Association (the "VPA").

Plaintiffs include the Mid Vermont Christian School ("Mid Vermont") as well as four students and their parents.

Plaintiffs have sued the interim Secretary of the Vermont Agency of Education and the Chair of the Vermont State Board of Education (collectively the "State Defendants"), the Superintendents of the Windsor Southeast Supervisory Union and the Orange East Supervisory Union (collectively the "Supervisory Unions"), the Hartland and Waits River Valley School Boards (the "Schools"), and the Executive Director of the VPA. All individuals are sued in their official capacities only. Plaintiffs seek injunctive and declaratory relief as well as compensatory damages and attorneys' fees.

Plaintiffs allege that Defendants have violated the Free Exercise Clause of the First Amendment by denying their eligibility for payments under the Town Tuitioning program as well as admission to the VPA.[1] They also allege that the school's expulsion from the VPA in a

---

[1] In addition to the Town Tuitioning program, plaintiffs allege that they are excluded from the Dual Enrollment Program that subsidizes the tuition of certain high school students when they take a university-level course. For purposes of this case, the criteria for participation are the same. The court includes the dual enrollment program when it refers to the Town Tuitioning program.

dispute over the participation of a transgender student athlete in high school competition violates their constitutional rights. (*See* Doc. 1 ¶¶ 272–302 (Comp. First and Second Claims for Relief).) They raise claims for violation of the Free Speech Clause (*Id.* at ¶¶ 303–18 (Third Claim for Relief)) and the right to religious autonomy and expressive association under the First Amendment (*Id.* at ¶¶ 319–29; ¶¶ 330–42 (Fourth and Fifth Claims for Relief).) They make an additional claim of violation of the right to parental autonomy under the Fourteenth Amendment. (*Id.* at ¶¶ 343–55 (Sixth Claim for Relief).) They make a claim of retaliation for Plaintiffs' actions in asserting their rights of religious exercise, speech, and association. (*Id.* at ¶¶ 356–68 (Seventh Claim for Relief).)

## **Pending Motions**

Plaintiffs have filed a motion for a preliminary injunction. They seek re-admission to the VPA and a declaration from the court that they are eligible to participate in the Town Tuitioning program as an approved school. (*See* Doc. 14.) Defendants oppose the motion on the grounds that the VPA was within its rights to expel Mid Vermont from the VPA after Mid Vermont forfeited a girls basketball game against another high school. Defendants assert that Mid Vermont is an approved school and is currently entitled to receive payments through the Town Tuitioning program.

Defendants have filed the following motions to dismiss:

The Schools seek dismissal on grounds of standing and mootness. They assert that Mid Vermont has received all tuition payments due under the Town Tuitioning Program and has received recognition as an "approved independent school" at all times relevant. The Schools also direct attention to their limited role in approving requests for tuition payments. (Doc. 28.)

The State Defendants seek dismissal on standing grounds and, for related reasons, on the ground that Plaintiffs have not alleged a continuing violation of federal law sufficient to support the exception to sovereign immunity created by the doctrine of *Ex Parte Young*.  (Doc. 39.)  Like the Schools' motion, this motion to dismiss rests largely on the assertion that Mid Vermont continues to receive the tuition payments it is due.

The Principals' Association seeks dismissal on grounds of claim preclusion, standing, and abstention.  The Association also asserts that Plaintiffs fail to make plausible allegations of a violation of their rights under the First or Fourteenth Amendments.  (Doc. 40).

The court held a hearing on all pending motions on April 19, 2024.  Both sides have supplied evidence through exhibits attached to the Complaint and the motion papers.  No additional evidence was offered at the hearing.  Briefing is complete.

The court will resolve the motion for preliminary injunction in this order and address the motions to dismiss in a separate ruling.

I.      **Motion for Preliminary Injunction**

The legal standard for issuance of a preliminary injunction on notice is well-established. The moving party must demonstrate that:

1.   Plaintiffs are likely to succeed on the merits or, at least, have raised serious questions going to the merits, and the balance of hardships tips in their favor;

2.   Plaintiffs are experiencing irreparable harm; and

3.   An injunction is in the public interest.

*See New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).  In this case, Plaintiffs seek what they describe as "a prohibitive preliminary injunction restoring the status quo ante – returning the parties to 'the last actual, peaceable uncontested status which

4

preceded the pending controversy.'" (Doc. 14-1 at 12 (citing *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018) (citation omitted)).)

### A. Likelihood of Success on the Merits

In order to tell whether Plaintiffs are likely to succeed on the merits, the court makes a preliminary determination of the facts. *O.N. Equity Sales Co. v. Staudt*, No. 2:07-cv-142, 2008 WL 271329, at *5 (D. Vt. Jan. 30, 2008). In this case, the facts are not greatly in dispute. At the hearing conducted by the court, neither side sought an opportunity to call a witness. Instead, they relied on the documents submitted in support of their motion papers. The parties draw very different conclusions from these documents. For purposes of the preliminary injunction only, the court relies upon the exhibits and affidavits submitted by both sides. Where there is a factual dispute, the court seeks to highlight it. These are vanishingly rare in this case, since the dispute has developed primarily through the exchange of letters and emails.

### Facts Related to Eligibility for Tuition Payments

The court begins with the dispute over Mid Vermont's eligibility for tuition payments and the receipt of these payments. This story requires a little background drawn from the records of this court as well as the reported decisions of the First Circuit and the United States Supreme Court.

In 2022, the Supreme Court issued its decision in *Carson v. Makin*, 596 U.S. 767, holding that Maine must provide tuition payments from school districts that do not operate high schools to private schools without regard to the sectarian nature of the school. "A State's antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Id.* at 781. The *Carson* decision is the third in a series of recent rulings removing the

traditional barrier preventing the use of public funds to subsidize religious schools.[2]  *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) (requiring Missouri to permit religious schools to apply for grant money to improve playground safety) and *Espinoza v. Montana Department of Revenue*, 591 U.S. 464 (2020) (striking down Montana's prohibition on state scholarship aid to students attending religious schools).

Since Vermont also provides tuition reimbursement in a system similar to that in use in Maine, it is not surprising that this court has seen cases similar to the litigation in Maine.  Even before the decision in *Carson*, the Second Circuit granted mandamus relief requiring Vermont state and municipal authorities to make tuition payments on behalf of children attending religious schools "to the same extent as parents who choose secular schools for their children, regardless of [a school's] religious affiliation or activities." *In re A.H.*, 999 F.3d 98 (2d Cir. 2021).  This ruling in June 2021 ended any dispute about whether tuition reimbursement is available to religious schools that meet other criteria for recognition as an "approved school." *See also A.H. by and through Hester v. French*, 985 F.3d 165 (2d Cir. 2021) (requiring Vermont to open its "dual enrollment" scholarship program to students attending religious high schools).

One other feature of Vermont law is relevant.  16 V.S.A. § 166 creates two categories of independent schools: those that are "recognized" and those that are "approved."  Attendance at either satisfies the requirement that with certain exceptions, children between 6 and 16 years of age attend school. *See* 16 V.S.A. § 1121.  Only students at approved schools are eligible for tuition reimbursement.  These schools must satisfy requirements related to evaluation by the state board of education or third-party accreditation, curriculum, and services. *See* 16 V.S.A. §

---

[2] The court uses "religious schools" to refer to schools such as Mid Vermont that are founded on religious principles and teach religious beliefs as part of the curriculum.

166(b). Recognized schools are held to a less exacting standard and must provide assurances

that they meet standards for a minimum course of study—a standard applicable to all schools as

well as home schooled children—and meet criteria for attendance, faculty and school safety. *See*

16 V.S.A. § 166(c).

In response to the *Carson* decision, the Vermont Secretary of Education Daniel French

wrote to all school superintendents on September 13, 2022, advising them that "[s]chool districts

may not deny tuition payments to religious approved independent schools [or similar schools].

Requests for tuition payments for resident students to approved independent religious schools …

must be treated the same as requests for tuition payments to secular approved independent

schools…". (Doc. 1-4.) Secretary French's letter notified the superintendents of the availability

of "[a] directory of independent schools—specifying whether the program is an approved

independent school, recognized independent school, or another type of program"—at the

Agency's Independent Schools webpage. (*Id.* at 2–3.)

The process of identifying independent schools as "approved" has long been in place.

The record is not clear about when Mid Vermont was first approved. Its most recent approval

occurred at a meeting of the State Board of Education on February 21, 2017, when its application

appeared on a consent agenda with five other independent schools. Mid Vermont has retained its

approval status since 2017. During the 2022-2023 school year, the school received tuition

payments for four students who resided in public school districts. (Doc. 14-15 (Aff. of Vicky

Fogg, ¶ 37).

Since approval must be renewed every five years, Mid Vermont initiated the process to

renew its status as an approved school in 2022. A review team from the Agency visited the

school in October 2022 and filed a recommendation in favor of a five-year renewal of approved

status. (Doc. 39-2) Decl. of Heather Bouchey, ¶ 3. Mid Vermont retains its approval status while the renewal process is pending. Vt. Admin. Code 7-1-2:3333.6. To this day, it remains an approved school.

The *Carson* decision in 2022 led the Agency to promulgate regulations to provide guidance to educators and others navigating the procedures for applying for tuition reimbursement for independent schools. *See* Rule 2200 Independent School Program Approval. https://education.vermont.gov/sites/aoe/files/documents/SBE%20Rule%202200%20Adopted%20Rule%20Filing-2022.pdf [https://perma.cc/UT3T-D84V]. The new regulations, issued on May 10, 2022, include a requirement for a certification that a school seeking independent status complied with federal and state law, including a statement that "the school complies with the Vermont Public Accommodations Act in all aspects of the school's admissions and operations." State Board of Education Rule 2226.6(2).

Vicky Fogg signed such a certification on January 5, 2023 as part of Mid Vermont's application for re-approval as an approved school. Her certification came with a qualification:

> The Mid Vermont Christian School is signing this form with the understanding that it must be read consistent with existing law and the U.S. and Vermont Constitutions. As a religious organization, the school has a statutory and constitutional right to make decisions based on its religious beliefs, including hiring and disciplining employees, associating with others, and in its admissions, conduct, and operations policies and procedures. By signing this form, the Mid Vermont Christian School does not waive any such rights. To the extent Rule 2200's requirements conflict with any of the school's beliefs, including on marriage and sexuality, the school has not included that language in its handbook or online, nor can it affirm that particular aspect of the Vermont Public Accommodations Act.

(Doc. 1-5).

On February 1, 2023, Secretary French recommended that the Vermont State Board of Education extend "conditional approval" to Mid Vermont and another school. Both schools had submitted qualified attestations as described above. The Board voted in favor of extending

conditional approval to Mid Vermont.  (Doc 14-3 (Minutes of State Board of Education February 1, 2023).)

The Board returned to Mid Vermont's application for approval at its meeting on February 15, 2023.  The conditional certification remained a potential obstacle to re-approval.  The Board voted to "postpone consideration of re-approval until such time a completed application has been received to include a signed Addendum for Independent School Applications – the "attestation clause" – without revision and consistent with Rule 2226.6 that requires the head of school to sign an assurance that the school complies with the Vermont Public Accommodations Act (9 V.S.A. Chapter 139) in all aspects of the school's admissions and operations."  (Doc. 42-2 at 4– 5).

On March 9, 2023, Ms. Fogg wrote to the Board in response to the grant of conditional approval.  She explained that Mid Vermont did not believe it was subject to the Vermont Public Accommodations Act since it is a private institution.  She renewed her statement that the school was a "religious organization with a constitutionally protected right to operate consistently with the religious principles for which we were established and maintained."  (Doc. 14-4 at 3.)  She requested that the Board renew the school's application as an approved independent school.  (*Id.*)  The Board responded that it was "not taking further action at this time."  (Doc. 14-5 at 2.)

On July 1, 2023, the Agency published a directory of all approved independent schools and other educational programs.  Mid Vermont appears on the list of "Approved Independent Schools."  (Doc. 28-5 at 10.)  The rules of the Board provide that "approval of a school completing a timely application for further approval shall extend until the Board acts on further approval."  Rule 2223.6 (Extension) Lexis Doc. CVR 22-000-004.  The Agency has never removed Mid Vermont from its list of approved independent schools.

9

During the spring and summer of 2023, some confusion developed over whether Mid Vermont was approved or recognized. Both parties had a hand in the error. According to Ms. Fogg, on April 24, 2023, she received a memorandum from the Agency titled "Recognized Independent School Contacts." (Doc. 14-15 (Fogg Aff., ¶ 52).) It provided information about continuing a school's "'recognized independent school status, pursuant to 16 V.S.A. § 166(c).'" (*Id.*)

On July 6, 2023, an employee of the Agency of Education sent Mid Vermont an email attaching "the forms to seek recognized school status for the 2023-2024 school year." This was an error, since in July the Agency published Mid Vermont's name as an *approved* independent school. Mid Vermont compounded the error by submitting an application for *recognized* status on July 26, 2023. The letter stated that Mid Vermont "should be classified as an approved independent school, capable of receiving town tuition funds and other public benefits, for the 2023-2024 school year. (Doc. 50-7.)

On August 3, 2023, the same employee who had sent the July 6 email sent Mid Vermont a letter advising that the agency "considers the school for 2023-2024 "to be a Recognized Independent School within the meaning of 16 V.S.A. § 166(c)....". (Doc. 1-6.)

In September 2023, the Hartland and Waits River Valley school boards both sent Mid Vermont tuition checks for high school students from their districts. (Doc. 14-15 (Fogg Aff., ¶ 61).) These payments were required by the Board's conditional recognition of Mid Vermont as an approved school in February and its inclusion in the list of approved schools published in July 2023.

Ms. Fogg responded by advising the Agency that Mid Vermont was surprised to receive the funds because she believed Mid Vermont had not been granted approved school status. She

asked for "clarity on MVCS's school status and how those funds should be handled." (Doc. 26-3 at 1.)

The districts requested the return of the checks until the confusion could be cleared up. Ms. Fogg complied. (Doc. 14-15 (Fogg Aff., ¶ 61-62).) She insists that her school remains classified as a recognized school "which means the School and the families that go here are not eligible for the Program and cannot receive Town Tuitioning funds, nor can they participate in the Dual Enrollment Program or other public benefit programs in the state." (*Id.* ¶ 56.)

Despite Ms. Fogg's gloomy forecast, the Agency stands by its original designation of her school as an approved school. On January 4, 2024, the Interim Secretary wrote to Mid Vermont advising that the application for approved status remained pending and that, until final action, "Mid Vermont Christian School remains an approved independent school." (Doc. 26-4 at 1.) In her affidavit, Secretary Bouchey describes the error as resulting from Mid Vermont's application for recognized status on July 26, 2023 and its approval by Agency staff on August 3, 2023. "This statement was an error, as the Board Rules specifically state that a school retains its approved independent status until the Board rules on an application for renewal." (Doc. 26-2 (Bouchey Aff., ¶ 6).)

Secretary Bouchey supplied copies of her January 4 letter to the two school districts that had previously sent tuition money to Mid Vermont. The two schools returned the funds to Mid Vermont. (Doc. 28-1 (Aff. of Christine Bourne, ¶ 7); Doc. 28-2 (Aff. of Randall Gawel, ¶ 7).) It is unclear from the record before the court whether Mid Vermont cashed the tuition checks after it received them for the second time.

Mid Vermont's application for renewal of its approved status remains pending due to delays related to "new rules primarily relating to special education requirements that went into

effect on July 1, 2023." Secretary Bouchey anticipates releasing its recommendation concerning Mid Vermont "in late spring or early summer" 2024. (Doc. 28-1 (Bouchey Aff., ¶ 9).)

### **Facts Related to the Controversy over the Transgender Basketball Player**

The VPA is a professional association of principals and other educational leaders. It offers a variety of programs to support educators. It is best known for its role in promulgating rules and policies governing high school interscholastic sports in Vermont as well as state-wide extracurricular activities such as spelling bees, debate, drama, and science and math teams. The VPA is open to independent schools. https://vpaonline.org [https://perma.cc/XQR2-HM5Q]. Membership in the VPA is a condition of participating in the athletic events and other activities it sponsors.

Prior to 2023, Mid Vermont was a member of the VPA. It fielded various student sports teams, including a high school girls basketball team.

On February 16, 2023, Mid Vermont wrote to the VPA about its concern that "there is a biological male playing on the girls' basketball varsity team at The Long Trail School." (Doc. 14-7 at 2.) Mid Vermont requested that "if we end up being their opponent in the State Tournament, that the biological male would not be allowed to play." (*Id.*) The letter identified the "clear advantage [males have] over females in the physical realm, namely size, speed, quickness, strength, muscle mass, bone density, lung capacity, etc." (*Id.*) It stated that girls playing on Mid Vermont's team were "extremely uncomfortable playing a contact sport with a member of the opposite sex both for reasons of safety and the overall uncomfortableness of the proximity and contact necessary to play this sport to its fullest." (*Id.)*

The VPA responded by email the same day. It pointed to the VPA's policy on gender identity and participation and stated that excluding a student would violate both the Vermont

12

Public Accommodations Act, 9 V.S.A. § 4502, and the Agency of Education's Best Practices for
Schools for Transgender and Gender Nonconforming Students. It stated that "[w]e do not intend
to violate our policy by honoring your request." (Doc. 14-8 at 2.)

Events moved quickly. On February 20, 2023, Mid Vermont forfeited a playoff game
against another high school because one of the players was a transgender girl. (Doc. 1-10.)

The executive council of the VPA met on March 13, 2023 and "determined that Mid-
Vermont Christian's forfeit (2/20/23) and corresponding rationale as shared in the Valley News
of 2/25/23 violates VPA Policies, which are aligned with Vermont state law. Specifically, the
school's actions do not meet the expectations of VPA's 1st and 2d policy, *Commitment to
Racial, Gender-Fair and Disability Awareness* and *Policy of Gender Identity*, respectively.
Thus, Mid-Vermont Christian school is ineligible to participate in VPA activities going
forward." (Doc. 1-10 at 3.)

By letter dated March 19, 2023 to the VPA, Mid Vermont appealed its expulsion. (Doc.
14-9.) In its letter, Mid Vermont complained about procedural deficiencies, including the lack of
written notice and the recommended penalty. On the merits, Mid Vermont renewed the
arguments made in its letter of February 16, 2023 concerning the advantage of biological males
over females. The school also raised the issue of religious belief. "By forcing our young ladies
to compete against biological males, the VPA is forcing [Mid Vermont] to affirm something that
violates our religious beliefs—i.e., that the males who play in the girls' leagues are females."
(*Id.* at 3.) The school stated that forfeiting one game was "'punishment' enough for these
students and our school" and requested reinstatement to the VPA. (*Id.* at 2–3.)

On April 3, 2023, the VPA Activities and Standards Committee wrote to Mid Vermont
and to the executive director of the VPA to outline the procedures for a review of the VPA's

13

action. (Doc. 30-2.) These procedures required an initial determination by the executive director of a probable violation and the recommended penalty, notice to the alleged violator, and an opportunity for a hearing. (*Id.*)

On April 4, 2023, the executive director sent Mid Vermont a notice of probable violation. (Doc. 30-3.) The letter identified the same violations of VPA policies previously described by the executive council on March 13, 2023. (Doc. 1-10.)

By letter dated April 9, 2023, Mid Vermont appealed for a second time to the VPA. The letter identified safety concerns, physical and athletic advantages, and the school's religious beliefs and "its own position on issues of sexuality" as the basis for its request for reinstatement. (Doc. 14-10 at 3.) In Mid Vermont's view, the VPA policy on transgender student athletes placed its students at risk, violated its religious beliefs, and forced "MCVS and its students to engage in speech and expression they do not wish to convey in order to participate equally in the VPA and its events." (*Id.*) Mid Vermont requested a ruling on the record as it stood on April 9, 2023. It did not seek an opportunity to introduce evidence.

Mid Vermont's appeal was heard by the VPA's Activities Standards Committee. By letter dated May 8, 2023, the committee rejected the appeal. (Doc. 14-11.) The letter identifies two bases for the school's position: the issues of safety and competitive advantage and the school's religious beliefs. The committee first addressed the policy of the VPA and, more broadly, the Agency of Education and the Vermont Chapter of the American Academy of Pediatrics in seeking to include transgender students in activities, including sports, consistent with their gender identity. The committee surveyed Vermont legislation, federal regulations, the position of Governor Scott, and the experience of other states—all of which the committee found

14

supported its position that transgender girls should be allowed to play on girls' high school teams and can do so safely and without unfair advantage.  (*Id.*)

Turning to the issue of religion, the committee rejected the school's contention that sending students to play on the same court as a transgender girl amounted to an endorsement of her gender choice.  The committee concluded:

> Participating in an athletic contest does <u>not</u> signify a common belief with the opponent. Brigham Young University athletes do not compromise their Mormon faith—or endorse Catholicism—when they play Notre Dame.  The act of playing together on a basketball court does not imply any approval of the values or beliefs of the opponent.

(*Id.* at 5.)  The committee identified the actions of Mid Vermont in "stigmatiz[ing] a transgender student who had every right to play" as the basis for the discipline.  (*Id.*)  It declined to confine the penalty to the forfeiture of the game at issue.  Identifying participation as the goal of high school sports, the committee upheld the penalty of expulsion.  It invited Mid Vermont to seek readmission if it agreed to "abide by VPA Policies and Vermont law, and [confirm] that its teams would compete with other schools who include transgender athletes…."  (*Id.*)

## I.   Likelihood of Success on the School Funding Claim

Plaintiffs seek a preliminary injunction "because they are currently losing out on public funds and athletic and extracurricular activities."  (Doc. 14 at 3.)  They seek an order requiring the state defendants to "(a) approve Mid Vermont Christian School as an approved independent school eligible to receive public funds and (b) allow the School to participate in the Town Tuitioning and Dual Enrollment Programs."  (*Id.*)  They are unlikely to succeed on this claim for a very simple reason: the defendants agree that Mid Vermont is entitled to the public funding they demand.  The record before the court at this preliminary stage of the case shows that Mid Vermont has always been designated as an "approved school" by the Agency of Education.

15

During the summer of 2023, Mid Vermont also applied to be a "recognized school." Through a series of errors, it received that designation, mere weeks after being included in the official directory of "approved schools." While Mid Vermont – and, to be entirely fair, a staff person at the Agency of Education -- was confused about its status, the two sending schools involved in the case were not. Both sent tuition checks to Mid Vermont, which Mid Vermont returned. By January 2024, Mid Vermont had received confirmation from the State Defendants that it was entitled to the tuition payments. The schools returned the checks to Mid Vermont. The defendants all agree that Mid Vermont is currently an approved school entitled to tuition payments from the "sending schools." These actions moot out any controversy over whether Mid Vermont's students are entitled to tuition reimbursement and participation in the dual enrollment program. *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001) ("The mootness doctrine, which is mandated by the 'case or controversy' requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties.").

Mid Vermont has a second string to its bow. It also seeks an injunction prohibiting the state defendants "from requiring [it]—as a condition to obtaining approved independent school status—to adopt and post a statement of nondiscrimination consistent with the Vermont Public Accommodations Act and Vermont Fair Employment Practices Act." (Doc. 14 at 3.) A reader will recall that Mid Vermont qualified its certification, reserving its right to act in compliance with its religious convictions. The state defendants have not ruled on Mid Vermont's re-application for approved school status. It is not known whether the addendum will present an obstacle to approval. A ruling by the court on this issue should not precede administrative actions. *Stern v. Shulkin*, No. 5:18-CV-71 (MAD/TWD), 2019 WL 6895417, at *4 (N.D.N.Y.

Dec. 18, 2019) ("the Court is hesitant to intervene into unresolved administrative matters which address this exact issue").

The short answer to the motion for a preliminary injunction concerning the school funding issue is that the issue is either not ripe or moot. There is no evidence that school funding has ever been withheld from Mid Vermont. Instead, Mid Vermont has refused to take "yes" for an answer: returning the public funds and denying that it retains its "approved school" status despite repeated assurances in a published directory and from the Agency itself that its status remains unchanged. Instead, what Mid Vermont really seeks to contest is whether the Agency will accept its "addendum" to the certification that Mid Vermont will follow the Vermont Public Accommodations Law. That remains an open question and, depending on the answer, may give rise to a constitutional issue. But the court is not willing to be the first to answer this question, since a judicial ruling may be unnecessary if the Agency accepts the certification, as qualified, and Mid Vermont qualifies in other respects for approved status. If approved status is denied in the future because of Mid Vermont's statement of religious conviction, there will be time to consider the constitutionality of the state's action then, not before it happens.

The court denies the preliminary injunction concerning state funding because the claim is unlikely to succeed on the merits. It is moot as to payments already sent to Mid Vermont. It is premature as to state action such as a denial of approved status which has not occurred and may never take place.

I.      **Likelihood of Success on Claims Arising from the Expulsion of Mid Vermont from the Vermont Principals Association**

The claim that the expulsion of Mid Vermont from the Vermont Principals Association violates Plaintiffs' constitutional rights stands on a different footing. The action about which

Mid Vermont complains has happened, and it has had real consequences for students who can no longer participate in athletic competitions and other activities sanctioned by the VPA.   The issue presents a conflict between the religious beliefs of Mid Vermont and the policy decision by the state educational authorities to allow transgender students to compete on the teams of their gender.  The court recognizes the sincerity and good faith of both sides.  The court will begin by restating the values for which each side advocates.

### A.   Mid Vermont's Religious Beliefs

Mid Vermont identifies itself as a Christian school "whose religious beliefs drive and form the foundation for everything it does." (Complaint, ¶ 5.)  These tenets include a belief "that God uniquely creates each person as either a male or female, one's sex is determined at creation and based on biology, and that sex is immutable." (Complaint, ¶ 8.)  "…[D]ue to its religious beliefs, Mid Vermont Christian requires all students to dress, use restroom/locker rooms, use pronouns, and play on athletic teams based on their biological sex." (Complaint, ¶ 49.)  These deeply held views prevent Mid Vermont from "facilitat[ing] any event that would give the appearance to its students and families that the School does not adamantly hold the beliefs it professes or that would undermine its beliefs." (Complaint, ¶ 42.)  These principles extend to a belief "that by competing against a boy who identifies as a girl on a girls' sports team … [Mid Vermont] would be affirming that sex is mutable, in violation of its beliefs." (Complaint, ¶ 50.)  "Simply put, Mid Vermont Christian's religious education is its religious exercise.  Anything that impedes, prohibits or undermines the former, burdens the latter." (Complaint, ¶ 52.)

### B.  The State's Policy on Gender Identity of Students

The State of Vermont sees these issues in a different light.

In 2017, the Agency of Education issued "Continuing Best Practices for School Regarding Transgender and Gender Nonconforming Students." https://education.vermont.gov/sites/aoe/files/documents/edu-best-practices-transgender-and-gnc.pdf [https://perma.cc/P39U-WH6E].  The directive seeks to reduce the high rate of harassment and assault directed against transgender students by highlighting their rights to self-determination, privacy, safety, and freedom from discrimination.  *Id.* at 3.  It endorses the inclusion of transgender students on sports teams "in accordance with the student's gender identity."  *Id.* at 6.  The directive advocates for a case-by-case resolution of issues raised by a student's participation in competitive sports.  *Id.*  It directs attention to the policies of the VPA. *Id.*

The Best Practices document identifies the legal bases for its policy as the Vermont Public Accommodation Law, 9 V.S.A. § 4502(a), that forbids discrimination on the basis of multiple characteristics including "gender identity" as well as the prohibition against harassment in schools established by 16 V.S.A. § 570.  It also references federal statutes including the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 20000d and other provisions.  The Best Practices recognize the high rates of mistreatment and attempted suicide experienced by transgender students.  The measures recommended include responses to discrimination and harassment; protection of students' privacy and official records; choice of names and pronouns; and concerns about restrooms, locker room accessibility, and gender segregation in activities such as overnight field trips.

The VPA issues Athletic Policies that govern many aspects of school sports.  These now include a "Policy on Gender Identity."  The policy follows the Agency's Best Practices in "providing all students with the opportunity to participate in VPA activities in a manner

consistent with their gender identity…". The policy describes the process by which a student may apply to try out for the team of the student's gender identity. It is a serious decision involving the student, parents, the district superintendent, and, if the student chooses, documentation from a doctor, psychologist, or counselor. There is a right to appeal a determination to the VPA.

The policy on gender identity creates an exception to the general policy of the VPA that "interscholastic athletics involving mix (boys/girls) competition is prohibited [unless there is no girls team]. …Therefore, boys shall not try out for traditional girls' sports and be eligible for state competition." VPA Athletic Policies, ¶ 16.11. https://docs.google.com/document/d/1_DMlEHHX3zIzO2jgqzaXLv2Puklx-o4y7IriQtRjQ0I/edit?pli=1#heading=h.uhyazdvuarq9 [https://perma.cc/924W-Z3BZ].

Read together, the Continuing Best Practices and the VPA Policy on Gender Identity express a commitment to accepting the gender decisions of students and including these students in school sports on the same basis as other children. The state educational policy is that a student who wishes to try out for girls' basketball and has followed the procedure for designating their gender as female should have that opportunity.

These opposing world views collided when Mid Vermont forfeited a girls' basketball game against another high school because a transgender student was playing for the other team. The VPA expelled Mid Vermont from the league because it had violated the gender identity policy.

Mid Vermont makes no bones about its intent to continue to forfeit games in which it believes a transgender student is playing. It seeks readmission to the VPA on the condition that it will not be penalized if it forfeits games for this reason in the future. When asked at the

preliminary injunction hearing about the basis for its participation in the future, counsel stated

that Mid Vermont intends to refuse to play against any team in single-sex sports like basketball

that includes a transgender player.

## C.  Governing Legal Standard

The first legal issue for decision in this and any other free exercise case is whether the

case is subject to the rational basis test as applied in *Employment Div., Dept of Human Resources*

*of Oregon v. Smith*, 494 U.S. 872 (1990) or strict scrutiny as in cases similar to *Church of*

*Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).  Because this area of the law

remains in a state of unrest, the court takes a moment to review the principal decisions.

The Free Exercise and Establishment clauses of the First Amendment were not applied to

the states until the decision of the Supreme Court in *Cantwell v. State of Connecticut,* 310 U.S.

296 (1940).  The Court struck down a Connecticut statute requiring the Jehovah's Witnesses to

obtain a license before soliciting door-to-door and vacated a conviction for breach of the peace.

The Court identified the issue which continues to cause confusion and controversy in Free

Exercise cases to this day.

> Thus, the [First] Amendment embraces two concepts, freedom to believe and freedom to act.  The first is absolute, but, in the nature of things, the second cannot be.  Conduct remains subject to regulation for the protection of society.  The freedom to act must have appropriate definition to preserve the enforcement of that protection.

*Id.* at 303–04 (footnote omitted).  There the matter rested until *Sherbert v. Verner*, 374 U.S. 398

(1963), in which the Court extended the strict scrutiny standard, already developed in cases

involving free speech and equal protection, to Free Exercise cases.  As in other settings, the legal

standard requires the court to determine whether the law burdens a sincere religious exercise,

whether the state can identify a compelling interest for passing the law, and whether there is a

less restrictive means to fulfill that interest.  *Id.* at 403–10.

The difficulty left by *Sherbert* was that "[i]n the 1970s and 1980s … courts granted very few religion-based exemptions to generally applicable laws despite applying strict scrutiny in many decisions." Winkler, *Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 Vanderbilt Law Rev. 793, 858-59 (2006). In *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1996), the Court eliminated strict scrutiny in cases involving laws of general application. "We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Id.* at 878–79. Instead, laws of general application are subject to a more lenient rational basis test.

The Court soon developed exceptions to the *Smith* rational basis test. These include restrictions on beliefs as opposed to acts; issues of church autonomy; cases involving the "hybrid" assertion of a second civil right at the same time, most frequently free speech; cases in which the state applies the law on a case-by-case basis; and cases explicitly targeting religion. Durham and Smith, *Religious Organizations and the Law*, § 3.7 (2023).

Mid Vermont seeks to apply strict scrutiny to the Defendants' actions both in enacting Rule 2200 and in enforcing the VPA's gender identity policy. (Doc. 14-1 at 15–16.) It argues that these policies "fail[] general applicability" because they allow for "individualized exemptions" and "individualized assessments." (*Id.*) Mid Vermont points to exceptions in the Vermont Public Accommodations Law for small lodging facilities, religious venues for weddings, and threats to health or safety. (*Id.* at 17.)

While Defendants respond to many aspects of Mid Vermont's motion, they have not addressed the legal standard.

For purposes of the motion for preliminary injunction, the court concludes that the Agency regulations governing the approved status of independent schools and the VPA and Agency directives concerning transgender athletes are rules of general application and neutral as to religion. Like Oregon's ban on peyote that was the subject of *Smith*, the state's regulations concerning transgender athletes apply to all schools, public and independent. That enforcement only results in the expulsion of schools that are offended by the participation of transgender athletes does not diminish the general application of the state's policy.

The examples of individualized exemptions offered by Mid Vermont are not persuasive. Of course, the decision about whether a transgender student should be allowed to try out for the girls' basketball team is an individualized decision about that athlete. No one claims otherwise. But that is not the decision in dispute. The decision in dispute is Mid Vermont's decision to refuse to play against teams that include such an athlete. There is no suggestion that some schools are given license to forfeit games and others not. There is no showing of individualized exemptions from the state regulations and the rules of the VPA that would support strict scrutiny.

In its briefing, Mid Vermont points to other examples of conduct which it finds sufficient to trigger strict scrutiny. It directs attention to *Fulton v. Philadelphia*, 593 U.S. 522 (2021), in which the Court identified individualized decision-making by local government as conduct which justified strict scrutiny. Examples included a system of exemptions from regulation and laws that prohibit conduct by religious organizations while allowing it by secular participants.

Mid Vermont argues that the case-by-case consideration of a *student's* decision to try out for a team consistent with their gender identity is an example of individualized enforcement. But that is not an example of disparate enforcement on religious grounds. Rather, the case-by-case consideration concerns relations between students and their school administrators when a

student first seeks to play on a different team than the one that matches the student's sex assigned at birth.

Mid Vermont also argues that the VPA exercises discretion over whether to punish a team for forfeiting. Obviously, teams who lack enough players to compete due to illness or injury will not be punished when they forfeit their game. That is in no way an example of treating religious schools differently than secular schools. The health example from the COVID era is a little closer to this case. In her declaration, Ms. Fogg points to events in the midst of the COVID crisis when three schools forfeited girls' basketball games because an opposing player was exempt from a league-wide mask requirement. She notes that the VPA did not expel those schools. A health concern in the midst of the fear and caution that gripped us during the COVID emergency is scant evidence that the VPA and Agency applies its policies concerning transgender athletes on an individualized basis. The court concludes that Mid Vermont is unlikely to demonstrate at trial that the state defendants engaged in the type of subjective, individualized decision-making concerning membership in the VPA that would require this court to engage in strict scrutiny.

A third basis for imposing strict scrutiny is the presence of what the *Smith* decision calls a "hybrid situation" that features the "Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press." *Smith*, 494 U.S. at 881–82. The reason the VPA expelled Mid Vermont is not in dispute: it was because Mid Vermont declined to play against a team with a transgender athlete for reasons of religious belief and student safety. There is no evidence that the expulsion of Mid Vermont was for some other reason, separately protected by the Constitution such as free speech or association.

The court concludes that this case is one of neutral application of educational policies that apply to all Vermont schools. Looking at the case through the lens of the preliminary injunction motion, there is no evidence that the Defendants developed the policies at issue with a view towards restricting religious practice or belief as in *Church of Lukumi*. The state policy of gender inclusion is neutral as to religion. It applies to all high schools that join the VPA. As Justice Frankfurter observed in *Minersville School Dist. Bd. of Ed. V. Gobitis*, 310 U.S. 586, 595 (1940), "[t]he mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities." (footnote omitted). For these reasons, the court concludes that the legal standard which it will apply when it reaches the merits is the rational basis test.

## II.    Likelihood of Success on the Challenge to Expulsion from the VPA

Application of a rational basis test to Vermont's policy of recognizing the gender choice of high school athletes is not likely to result in a ruling favorable to Mid Vermont.

The policy decision about how to respond to transgender high school students who wish to play on the girls' sports teams is complicated. As the parties' briefing illustrates, the problem presents issues of compromise, inclusion, safety, competitive fairness, personal autonomy, and privacy, both of the transgender student and of the other girls on both teams. It is not easy to know how to proceed. But "easy" has never described the work of the Agency of Education, and the Best Practices document illustrates the pains that the Agency took in addressing the concerns of the many stakeholders.

Obviously Mid Vermont is unhappy with the outcome. The court accepts without reservation the sincerity of the school's commitment to traditional views of gender and sexuality. Faced with the presence of a transgender student on an opposing team, the school had choices. It

could have explained to its students that the world holds many forms of belief and behavior, not all of which are universally accepted, and that playing basketball with a transgender student was no endorsement of their gender identity. Or it could withdraw from the competition—which is the course it chose. Mid Vermont has been candid with the Agency and the court about its decision to withdraw from any single sex competition in which a transgender student participates, now and in the future. Mid Vermont seeks a procedure under which it chooses which games it will contest and which it will sit out, based on what it hears about the gender choices of students on the other team. The VPA has rejected this proposed procedure. As its denial of Mid Vermont's appeal illustrates, it has concerns over the consequences to other schools and transgender athletes of allowing Mid Vermont to shun a transgender student in a public act of forfeiture.

The narrow legal issue is whether the VPA's policy has a rational basis. To state the question is to answer it. It is not necessary to agree with the decision the VPA and the Agency of Education reached. It is enough to recognize that their policy of inclusion received broad support from elected officials and representatives, from medical authorities, and from existing state law. It is sufficient to uphold the implementation of these policies to recognize that the state has a legitimate interest in extending the protection of inclusion to transgender students and has concluded that the better course is to permit them to participate in girls' sports (or boys) despite their sex assigned at birth. Since the state applies its athletic policy uniformly and does not single out religious organizations for enforcement or discrimination, it is unlikely to be found to have violated Mid Vermont's First Amendment rights, including its right of free exercise of religion.

26

## **Conclusion**

For these reasons, the court DENIES the motion for a preliminary injunction. The court will rule separately on the pending motions to dismiss.

Dated at Burlington, in the District of Vermont, this 11th day of June, 2024.

Geoffrey W. Crawford, Chief Judge
United States District Court